UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
|---|---|---|---|
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 1 of 11 |

Present: The Honorable   **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—[REDACTED] ORDER RE DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [90] [92]**

**I.
FACTUAL AND PROCEDURAL BACKGROUND**

This matter is before the Court on Defendant's Motion to Dismiss ("MTD") Plaintiffs' Third Amended Complaint ("TAC"). [Doc. # 90.] The Court incorporates herein the general factual background, as well as the legal standards applicable to this motion, that are set forth in its July 24, 2019 Order on Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. MTD 1 Order [Doc. # 57]. The TAC contains the following causes of action against Defendant: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), (2) violation of California's Unfair Competition Law ("UCL"), and (3) violation of California Song-Beverly Consumer Warranty Act. TAC [Doc. # 86]. Plaintiffs add new allegations supporting their claims in the TAC in light of the September 2019 Safety Recall N192268490 ("Recall"). *See* MTD, Ex. A [Doc. # 90-2].[1] Defendant now moves to dismiss Plaintiffs' claims and the MTD is fully briefed. Opp. [Doc. # 94]; Reply [Doc. # 104].

The Recall notifies owners of several GM models of a safety defect: "In some circumstances, these vehicles may have a condition in which the engine-mounted mechanical vacuum pump output may decrease over time, decreasing the amount of vacuum/power brake assist." MTD, Ex. A at 2.[2] As a part of the Recall, GM provides affected models with a

---

[1] The Recall Report is a publicly available document published by NHTSA at: https://static.nhtsa.gov/odi/rcl/2019/RCSB-19V645-6988.pdf. Because the Recall Report is a publicly available government document, whose accuracy no party questions, the Court may take judicial notice of it. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016). Defendant additionally asks the Court to take judicial notice of MTD, Ex. B, Special Coverage Adjustment N182202780 ("Special Coverage"), which is published by NHTSA at: https://static.nhtsa.gov/odi/tsbs/2019/MC-10167479-9999.pdf. [Doc. # 90-3.] Judicial notice is appropriate as to that document for the same reasons.

[2] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 2 of 11 |

software update that "reprogram[s] the electronic brake control module with a new calibration that will improve how the system utilizes the hydraulic brake boost assist function when vacuum assist is depleted." *Id.* In addition, the Special Coverage notifies owners of the same condition as the Recall and provides an extended warranty for the condition. MTD, Ex. B at 2. The Special Coverage offers replacement vacuum pumps and vacuum pump belts or allows owners who paid for repairs to submit requests for reimbursement. *Id.* Plaintiffs have received the Recall repair, but they allege that their vehicle remains defective because the Recall repair only replaces the existing defective part with a new defective part, rather than addressing the defect. TAC at ¶¶ 10, 51. Plaintiffs also allege that the Recall failed to notify owners of the true nature of the Alleged Defect. *Id.* at ¶ 11.

## II.
## DISCUSSION

Defendant argues that the Court should dismiss Plaintiffs' claims because: (1) Plaintiffs lack standing to sue, (2) Plaintiffs' claims for equitable relief are moot, (3) federal law preempts Plaintiffs' recall-related claims, and (4) the doctrine of primary jurisdiction bars Plaintiffs' claims. The Court discusses each of these arguments below.

**A.     Standing**

Defendant again challenges Plaintiffs' Article III standing to bring the present action. To demonstrate standing, plaintiffs "must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Defendant first argues that Plaintiffs do not allege an injury in fact. Plaintiffs respond that they have suffered a cognizable injury because: (1) the Recall and Special Coverage do not remedy the Alleged Defect, (2) they have not been compensated for the diminished value of their vehicle, and (3) there is a potential for future injury because their vehicle remains defective. Opp. at 2–8. To establish injury in fact, a plaintiff must show that their injury is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 136 S. Ct. at 1548 (citation and internal quotation marks omitted). While a "concrete" injury must actually exist, "the risk of real harm" can also satisfy the concreteness requirement. *Id.* at 1549.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 3 of 11 |

### 1. Actual Injury Based on Diminished Value

Plaintiffs allege that, because of the defect, their vehicle is worth less than it would be otherwise. They claim that if they had known about the Alleged Defect at time of purchase, they "would not have purchased the Suburban or paid as much for it as they did." TAC at ¶ 21. Defendant contends that these allegations are inadequate to demonstrate standing because Plaintiffs do not claim that the vehicle has manifested the Alleged Defect since receiving the Recall repair. But this Court has previously recognized that plaintiffs need not personally experience the defect at issue to suffer a concrete economic loss. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig. (In re Toyota I)*, 754 F. Supp. 2d 1145, 1161–66 (C.D. Cal. 2010) (ruling that plaintiffs need not experience the vehicle's alleged defect in order to recover economic loss sufficient to confer standing). In *In re Toyota I*, the court determined that the plaintiffs bargained for safe vehicles with functioning braking systems. Because their car's value decreased in light of the defect, which interfered with the braking system's functionality, they suffered an injury by paying more for the vehicle than they would have if they had known about the defect. *Id.* at 1165-66.[3]

Defendant cites to *Sugasawara*, to argue that when a manufacturer issues a recall that fixes plaintiffs' alleged defect, plaintiffs no longer suffer economic loss since the recall repair restores the vehicle's pre-defect value. 2019 WL 3945105, at *6. Unlike in *Sugasawara*, however, Plaintiffs assert that the Recall has not in fact remedied the Alleged Defect, and that their vehicle "remains defective" even after undergoing the recommended repair. TAC at ¶ 51. If the Recall repair has not fixed the defect, it did not restore Plaintiffs' vehicle to its pre-defect value.

Plaintiffs provide facts to support their allegation that the Recall does not fix the Alleged Defect. The Recall "reprogram[s] the electronic brake control module" so that the hydraulic brake system engages earlier. MTD, Ex. A at 2. The hydraulic brake system fails when the vacuum assist pump is starved of oil, due to an oil inlet filter screen that is prone to clogging. TAC at ¶ 8. Because "the hydraulic brake assist function occurs only after the defective vacuum pump has failed and the vehicle's braking ability has already been compromised," Plaintiffs allege that the Recall does not fix the "abnormally hard brake pedal or the increased stopping distances caused by the [Alleged] Defect." *Id.* at ¶¶ 9–10. Plaintiffs also allege that other

---

[3] *In re Toyota* reasons that, under a benefit of the bargain theory, plaintiffs must allege "overpayment, loss in value, or loss of usefulness." *Id.* at 1166. Plaintiffs' allegation that the Alleged Defect amounts to an "irreparable safety hazard" is sufficient to state that the vehicle has lots its usefulness. TAC at ¶ 66. Indeed, courts recognize that a defective vehicle is worth less than a non-defective one. *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019); *In re Toyota*, 790 F. Supp. 2d at 1163.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 4 of 11 |

drivers who have received the Recall repair still experience the Alleged Defect or experience worse braking responses. *See id.* at ¶¶ 52–60. Taken as true, these allegations demonstrate that Plaintiffs "continue to be damaged by the ongoing devaluation of their vehicle and the out-of-pocket expenses paid to adequately repair the [Alleged] Defect." *Id.* at ¶ 61.

Defendant also argues that Plaintiffs' injuries are conjectural and speculative where they have not sought all remedies available under the Special Coverage. Defendant argues that the Special Coverage would allow Plaintiffs to replace the vacuum pump or otherwise seek reimbursement. MTD at 6–7. But Plaintiffs claim that the available replacement vacuum pump is merely a new defective pump. Accordingly, they ask the Court to require GM to "replace the vacuum pump with an *improved* one . . . ." TAC at ¶ 11 (emphasis added). Since neither the Recall nor the Special Coverage allow for relief to fully address Plaintiffs' alleged injury, they have standing to bring this action.

### 2. Actual Injury Based on Uncompensated or Unrepaired Property Damage

Defendant argues that Plaintiffs cannot establish injury based on uncompensated or unrepaired property damage to their vehicle. Defendant cites to its Exhibit C, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which it claims shows that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ [Doc. # 90-4.] Generally, courts reviewing motions to dismiss "must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Incorporation by reference allows district courts to consider documents that the defendant attaches to a motion to dismiss, when "the plaintiff's claim depends on the contents of [the] document . . ., and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.* But the mere mention of the existence of a document in a pleading is insufficient to incorporate the document by reference. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). And when a complaint fails to mention a document at all, courts may not consider extrinsic evidence under the incorporation by reference doctrine unless the plaintiff's claim necessarily depends on the document's contents. *Id.* at 908; *see also Knievel*, 393 F.3d at 1076–77 (affirming consideration of the defendant's website page in a motion to dismiss a claim of defamation where the court necessarily needed to consider the broad context in which the allegedly defamatory photo and caption appeared). Although Defendant contends that Plaintiffs refer to the document in paragraph 26 of the TAC, *see* MTD at 14 n.6, Plaintiffs do not mention the document in that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 5 of 11 |

paragraph or elsewhere in the TAC. Nor has Defendant shown that Plaintiffs' claim necessarily depends on the existence or contents of the document. The Court therefore declines to consider the document through the doctrine of incorporation by reference.

Furthermore, Plaintiffs argue that the Court should not consider the document or Defendant's argument because the Court previously instructed Defendant to "address [its] motion only to Plaintiffs' new allegations. Defendant may not raise any new arguments that it could have raised, but did not raise, in its first two MTDs." MTD 2 Order at 7 [Doc. # 85]. The allegations in the TAC on which Defendant premises its incorporation by reference argument are unchanged from the SAC. *See* SAC at ¶ 21 [Doc. # 58]. Plaintiffs raise no new allegations in the TAC regarding injuries based on uncompensated or unrepaired property damage. Plaintiffs are therefore correct that Defendant's argument based on the ███ runs afoul of the Court's prior Order.

In sum, the Court declines the consider the ███ at this stage. To the extent that Defendant wishes to use the document at a later date when the Court may consider factual challenges to Plaintiffs' case, it may do so.

### 3. Potential Future Injury

Defendant also argues that Plaintiffs cannot plead potential for future injury. For a future injury to establish Article III standing, the "threat of injury must be both real and immediate, not conjectural or hypothetical." *City of L.A. v. Lyons*, 461 U.S. 95, 101–02 (1983). The Ninth Circuit has consistently held that standing exists "where there is a 'credible threat' that a probabilistic harm will materialize. *NRDC v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013).

The cases that Defendant cites to support its argument that Plaintiffs have made no such showing are unpersuasive. In *Munns v. Kerry*, 782 F.3d 402 (9th Cir. 2015), the Ninth Circuit held that the plaintiff, a security contractor, lacked standing to challenge a State Department policy where the policy was no longer in effect and the plaintiff was no longer working as a security contractor. 782 F.3d at 409–10. The court found that future injury was "too speculative" where the plaintiff would have to be hired again, the State Department would have to reinstate the policy, and the policy would have to cause injury. *Id.* Here, the threat of injury to Plaintiffs is far less speculative. They purchased a vehicle that Defendant acknowledges contains a defect, the vehicle manifested the defect before receiving the Recall remedy, and numerous other drivers have experienced the same or worsening defect after receiving the Recall repair. Since Plaintiff's vehicle contains the same allegedly defective part, and underwent the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2153-DMG (SPx) | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 6 of 11 |

same allegedly ineffective repair, there is at least a "credible threat" that the danger posed by the defect persists.

Defendant also cites to *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374 (6th Cir. 2015), where the plaintiffs did not allege a future injury. In that case, the Sixth Circuit ruled that plaintiffs lacked standing where they failed to show that an unspecified airbag warning light was indicative of a defect, did not plead facts to support that their vehicle diminished in value, and could not show that spending a half-day at the dealer to diagnose the problem was a loss of use and enjoyment. 624 F. App'x 374 at 378–79. Plaintiffs' allegations are different: they have adequately indicated the Alleged Defect exists and have alleged that their vehicle's value has diminished in light of the defect and the failed attempt to remedy the defect. It is also self-evident that Plaintiffs are unable to enjoy a car with malfunctioning brakes.

In *Sugasawara*, Ford issued a recall due to a sparking seatbelt pretensioner that caused fires to start after car crashes. 2019 WL 3945105, at *1–3. Ford acknowledged that the cause of the fires was the sparking seatbelt pretensioner and recalled vehicles to have flammable materials removed from areas that could catch fire. *Id.* at *2–3. The plaintiffs did not experience the defect before or after the recall repair and did not plausibly allege that the fire hazard existed after the recall repair. *Id.* at *3. The plaintiffs alleged only that they remained concerned that the defect continued to pose a safety hazard. *Id.* Thus, the court did not find a credible threat of harm where they failed to plausibly allege that the recall failed to cure the defect . *Id.* at *5.

Here, Plaintiffs allege three vacuum pump failures prior to the Recall repair. TAC at ¶¶ 22, 24, 30. Plaintiffs also allege facts, taken as true, demonstrating that the Recall fails to cure the Alleged Defect. *See Id.* at ¶¶ 52–60 ("[S]cores of Class Members who received the Recall repair have complained to NHTSA that they still experience the Class Defect, and others complain the 'repair' made breaking response worse."). They also allege that Defendant is aware of the Recall's ineffectiveness:

> Essentially, customers are coming in for the safety recall, and then complaining that they are: (1) experienced [sic] hard brake pedal all the time now (2) didn't have an issue before, but now have the hard brake pedal. They return to the dealership, technician performs the vacuum test and identifies the pump is bad and few customers are covered by the Special Coverage.

TAC, Ex. I at 137 [Doc. # 86]. Accepting Plaintiffs' allegations as true, there is a credible threat that harm will materialize, sufficiently establishing standing based on potential future harm.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 7 of 11 |

In sum, Plaintiffs have Article III standing based on alleged economic loss and potential future injury.

**B.  Mootness**

Defendant argues that Plaintiffs' claims for equitable relief are prudentially moot in light of the Recall and Special Coverage. The Ninth Circuit has expressly adopted or rejected the doctrine of prudential mootness but noted that cases "might permissibly be dismissed under a doctrine of 'prudential mootness,' adopted by some of our sister circuits, . . . if circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief." *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (alteration in original) (citations omitted). Even when plaintiffs have Article III standing, they must still show that a judicial remedy is necessary to provide the relief that they seek. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012).

Defendant cites to *Winzler* and *Cheng v. BMW of N. Am., LLC*, 2013 WL 3940815 (C.D. Cal. July 26, 2013), to argue that Plaintiffs' claims for equitable relief are prudentially moot. But "*Winzler* and *Cheng* are unpersuasive where plaintiffs seek 'recovery for losses in market value.'" *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1219 (S.D. Fla. 2017) (citations omitted). Moreover, both cases are distinguishable because the courts found that the NHTSA-supervised recalls provided plaintiffs with the relief they sought. In *Winzler*, the plaintiff argued that the recall process may fail to provide her requested relief. 681 F.3d at 1211–12. The court held that the plaintiff did not show a "cognizable danger" of failure where the NHTSA-supervised recall gave her a remedial promise from another branch of government for the exact defect she alleged. *Id.* at 1210. In *Cheng*, the plaintiff argued that the recall should be extended to more models. 2013 WL 3940815, at *1. In dismissing the claim on the doctrine of prudential mootness, the court emphasized that plaintiff's vehicle was encompassed within the recall, which provided plaintiff with his requested relief. *Id.* at *4.

This case is more analogous to *Martin v. Ford Motor Co.*, where the plaintiff challenged the adequacy of the recall. In *Martin*, the plaintiff alleged that there was a design defect in the rear axle, where a lack of drainage ports traps water in the axle and causes it to rust and, ultimately, crack. 765 F. Supp. 2d 673, 676 (E.D. Pa. 2011). The defendant's voluntary recall offered repair to owners in "high corrosion areas," which included only 22 states. *Id.* at 678. The recall did not address the alleged design defect, but provided the installation of reinforcement brackets, repair, or replacement parts. *Id.* The court found that plaintiff's claims were not prudentially moot where he sought a nationwide recall and alleged that the recall was inadequate because it did not remedy the defect in its entirety. *Id.* at 681–82.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 8 of 11 |

As in *Martin*, Plaintiffs argue that the Recall inadequately addresses the Alleged Defect. Because the Recall allegedly does not provide Plaintiffs with the full relief they seek, the Court finds that the doctrine of prudential mootness does not warrant dismissal of Plaintiffs' claims for equitable relief.

**C.    Preemption**

Plaintiffs ask for an injunction requiring Defendant to buy back vehicles, refund the vehicles' purchase price, or replace defective components.  TAC at Prayer for Relief.  Defendant argues that Plaintiffs' recall-related claims are preempted because they conflict with the Federal Safety Act, 49 U.S.C. § 30101 *et seq.*, which prescribes federal standards for remedies and notice.

The Safety Act does not explicitly preempt state law, but preemption may be "express or implied." *In re Toyota I*, 754 F. Supp. 2d at 1195.  *In re Toyota I*, 754 F. Supp. 2d at 1195; *see* 49 U.S.C. § 30103(b)(1) (allowing states to enforce safety standards that are identical to or impose higher performance requirements than federal standards).  There are two types of implied preemption:  field preemption and conflict preemption.  *Pac. Gas & Elec. Co.*, 461 U.S. at 203–04.  Defendant contends that conflict preemption applies.

Conflict preemption "arises when compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Id.* at 204 (citation and internal quotation marks omitted).  Conflict cannot be "speculative or hypothetical."  *In re Toyota I*, 754 F. Supp. 2d at 1196 (citation omitted).  State law must "actually conflict" with federal law.  *Id.*; *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) ("Where Congress has not entirely displaced State regulation in a specific area, State law will still be preempted to the extent that it actually conflicts with federal law.").  But there is a "presumption against implied preemption of State law in areas traditionally regulated by the States."  *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 958 (N.D. Cal. 2004) (citing *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989)).  Since the area of law in question is motor vehicle safety, which is traditionally an area of State power, the anti-preemption presumption applies.  *Id.*  Thus, "Defendant bears the burden of showing that it was Congress's 'clear and manifest' intent to preempt State law."  *Id.* at 962.

Defendant has not shown that an actual conflict exists with Plaintiffs' request for a recall because it does not appear that the injunction that Plaintiffs seek would frustrate NHTSA's ongoing supervision of the existing Recall or frustrate Congress' intent to improve highway

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-2153-DMG (SPx)** | Date | August 17, 2020 |
|---|---|---|---|
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 9 of 11 |

safety. *See id.* at 1198; 49 U.S.C. § 30101 ("The purpose of [the Safety Act] is to reduce traffic accidents and deaths and injuries resulting from traffic accidents."). Defendant does not point to a specific NHTSA investigation into the Alleged Defect, and therefore cannot show that a court-ordered remedy would clearly conflict with "congressional goals." *Chamberlan*, 314 F. Supp. 2d at 963 (quoting *ARC Am. Corp.*, 490 U.S. at 101).

While Defendant relies on *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000), that decision is distinguishable. In *Geier*, the plaintiff brought her claims of negligence based on the manufacturer's failure to add a driver's side airbag. 529 U.S. at 865. The plaintiff's action would have imposed a duty to install an airbag, which "would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems, such as automatic belts or passive interiors." *Id.* at 881. Since it was the U.S. Department of Transportation's express purpose to give manufacturers the choice of different passive restraint systems to accomplish other federal objectives related to traffic safety, the Court found that federal law preempted plaintiff's claims. *Id.* at 875–82. Similarly, in *Griffith v. Gen. Motors Corp.*, 303 F.3d 1276 (11th Cir. 2002), the plaintiff alleged that a center seat lap belt was a dangerous design defect. 303 F.3d at 1278. The court found that the same federal law at issue in *Geier* preempted the plaintiff's claims because that law existed to give manufacturers options in designing seatbelts. *Id.* at 1282. Defendant has not shown that Plaintiffs' requested relief would similarly interfere with a congressional or agency purpose.

Defendant argues that Plaintiffs' recall claims conflict with specific provisions of the Safety Act pertaining to vehicle recalls. MTD at 9 (citing 49 U.S.C. §§ 30119(d)(1), 30120; 49 C.F.R. § 577.10). According to Defendant, 49 U.S.C. section 30120 gives manufacturers the option to remedy defective parts by, among other options, "repairing the equipment," and, therefore, any attempt by Plaintiffs to impose additional requirements through state-law causes of action amounts to a conflict with federal law. But Plaintiffs' contention is not that Defendant refused to repair their vehicle through a recall. It is that Defendant's recall repair is ineffective. Defendant has not shown that it would be a "physical impossibility" to comply with both California law and the Safety Act's mandate that manufacturers may remedy defective equipment by providing repairs that actually fix the defect.

Nor has Defendants demonstrated an actual conflict between the notification standards in 49 U.S.C. section 30119 and the state laws under which Plaintiffs bring claims. Instead, Defendant simply states that the Safety Act contains notification standards, cites to a passage in the TAC wherein Plaintiffs allege that Defendant failed to notify Plaintiffs of the nature of the defect, and concludes that any claims based on those allegations are preempted. But it is Defendant's burden to overcome the presumption against preemption that exists in this context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | ED CV 18-2153-DMG (SPx) | Date | August 17, 2020 |
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 10 of 11 |

*Chamberlan*, 314 F. Supp. 2d at 962. Bare conclusions that Plaintiffs' claims conflict with federal law, absent any real demonstration that they in fact do, are insufficient to carry that burden.

### D.  Primary Jurisdiction

Defendant argues that Plaintiffs' claims for equitable relief should be dismissed because they directly interfere with NHTSA's supervision of Defendant's ongoing recall. MTD at 17–18. The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint pending the resolution of an issue within the special competence of an administrative agency. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine is properly applied when the following factors are present: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

First, the "issue" presented by Plaintiffs' claims arise under California consumer protection, unfair competition, and contract laws. Second, while NHTSA was established to set motor vehicle safety standards, Plaintiffs do not challenge any NHTSA standards or regulations. *See* 49 U.S.C. § 30101. To the contrary, Plaintiffs' state law claims "do not require resolving questions of compliance with NHTSA regulations." *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods. Liab. Litig. (In re Toyota Hybrid Brake)*, 890 F. Supp. 2d 1210, 1224 (C.D. Cal. 2011).

Third, the Safety Act's plain language reveals that Congress did not intend for NHTSA to have sole authority over motor safety standards. Congress allowed for states to prescribe and enforce motor safety standards. *See* 49 U.S.C. § 30103(b)(1) ("[T]he United States Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter."). Indeed, a number of other courts in the Ninth Circuit have rejected primary jurisdiction arguments in cases involving vehicle defects and recalls on similar grounds. *See In re Toyota Hybrid Brake*, 890 F. Supp. 2d at 1223–24; *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1278–79 (C.D. Cal. 2016); *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 906–07 (N.D. Cal. 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | ED CV 18-2153-DMG (SPx) | Date | August 17, 2020 |
|---|---|---|---|
| Title | *Scott Peckerar, et al. v. General Motors, LLC* | Page | 11 of 11 |

Finally, Plaintiffs' state law claims are "within the conventional competence of the courts." *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1219 (N.D. Cal. 2002) (quotation omitted). Cases involving vehicle defects are not generally so complex that they require specialized expertise or have been subjected to "comprehensive federal regulatory authority." *Reniger*, 122 F. Supp. 3d at 907. Nor must the Court defer to NHTSA simply because an issue in this case is "conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). And there is little danger of varying administration across various states in this case, where Plaintiffs' proposed class is limited to "consumers who purchased or leased in California" certain vehicles. TAC at ¶ 120. *See Reniger*, 122 F. Supp. 3d at 907.

In sum, Defendant has not shown that the primary jurisdiction doctrine requires the Court to dismiss Plaintiffs' claims.

### III.
### CONCLUSION

In light of the foregoing, Defendant's MTD is **DENIED**. Defendant shall file its Answer to the TAC by **September 7, 2020**.

**IT IS SO ORDERED**.